UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:18-cv-00346-FDW

| | |
|---|---|
| ROBIN SCRUGGS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NANCY A. BERRYHILL, Commissioner of )<br>Social Security Administration, )<br>)<br>Defendant. )<br>) | ORDER |

THIS MATTER is before the Court on Plaintiff Robin Scruggs' Motion for Summary Judgment (Doc. No. 6) filed November 20, 2018, and Defendant Commissioner of Social Security Nancy A. Berryhill's ("Commissioner") Motion for Summary Judgment (Doc. No. 8) filed January 22, 2019. Plaintiff, through counsel, seeks judicial review of a partially unfavorable administrative decision on her application for Title II and Title XVI benefits.

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment (Doc. No. 6) is DENIED, the Commissioner's Motion for Summary Judgment (Doc. No. 8) is GRANTED, and the Commissioner's decision is AFFIRMED.

I. BACKGROUND

Plaintiff filed an application for Disability Insurance Benefits on April 9, 2011, alleging disability beginning October 26, 2009. (Tr. 490). This claim was denied initially and upon reconsideration, and Plaintiff requested a hearing, during which Plaintiff amended her disability onset date to June 24, 2011. (Tr. 490). Plaintiff's claim was denied in an unfavorable April 1, 2013, decision. (Tr. 490). On June 26, 2014, Plaintiff's request for review by the Appeals Council

1

was denied. (Tr. 490). Plaintiff then appealed to this Court, which on May 13, 2015, reversed and remanded the case under section 205(g) of the Social Security Act, instructing the ALJ to include consideration under Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), of the impact Plaintiff's mental limitations had on her ability to function at work for an entire workday. (Tr. 490). The Appeals Council then vacated the ALJ's previous decision and remanded the case to a different ALJ for further proceedings. (Tr. 490). In the interim, Plaintiff filed additional claims for Title II and Title XVI disability benefits on July 23, 2014, which were consolidated into the original file for a new hearing. (Tr. 490). After a hearing on July 22, 2016, the ALJ issued an unfavorable decision as to all of Plaintiff's consolidated claims. (Tr. 487). Plaintiff subsequently requested review by the Appeals Council and was granted a partially favorable decision finding Plaintiff disabled as of August 29, 2016. (Tr. 481).

The Appeals Council adopted the ALJ's findings that Plaintiff had not engaged in substantial gainful activity since June 24, 2011, (Tr. 480) and Plaintiff is severely impaired by diabetes mellitus, residuals status fractures and surgery of the left arm, left AC joint osteoarthritis and bursitis, right shoulder bursitis, left knee osteoarthritis, gout, plantar fasciitis, hypertension, obesity, and depression. (Tr. 481-482). The Appeals Council also agreed with the ALJ's determination Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, App. 1. (Tr. 482). The Appeals Council adopted the ALJ's finding of Plaintiff's Residual Functional Capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is limited to frequent but not constant overhead reaching with the left upper extremity; occasional pushing/pulling with the lower extremities and performing simple, repetitive tasks.

(Tr. 495-496). During the ALJ hearing, in response to a hypothetical that factored in Plaintiff's age, education, work experience, and RFC, the vocational expert ("VE") testified that although Plaintiff had no past relevant work, Plaintiff could perform the following jobs available in the national economy: "addresser" with 70,000 jobs, "call out operator" with 80,000 jobs, and "final assembler" with 65,000 jobs. (Tr. 502). As a result, the Appeals Council adopted the ALJ's conclusion Plaintiff was not disabled, as defined under the Social Security Act, from June 24, 2011, through August 28, 2016, but did become disabled as of her fiftieth birthday, August 29, 2016. (Tr. 480).

Plaintiff has exhausted all administrative remedies and now appeals the decision of the Appeals Council finding Plaintiff was not disabled from June 24, 2011, to August 28, 2016, and requests a remand for purposes of calculating Plaintiff's benefits. (Doc. No. 7, 24).

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code permits judicial review of the Social Security Commissioner's denial of social security benefits. When reviewing a Social Security disability determination, "[i]f the [Commissioner's] dispositive factual findings are supported by substantial evidence, they must be affirmed." Kellough v. Heckler, 758 F.2d 1147, 1149 (4th Cir. 1986). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation marks omitted). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (citation omitted). In reviewing the record for substantial evidence, the Court does "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the

[Commissioner]. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner]." Id.

In considering an application for disability benefits, the Commissioner uses a five-step sequential process to evaluate the disability claim. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the [Commissioner] must assess the claimant's residual functional capacity before proceeding to step four." Lewis, 858 F.3d at 861. The RFC equates to "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. Id. § 416.945(a)(1); § 404.1520(a)(4)(iv).

> When assessing the claimant's RFC, the [Commissioner] must examine "all of [the claimant's] medically determinable impairments of which [the Commissioner is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, [the Commissioner] must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the Commissioner] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the Commissioner]

4

can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862. The Commissioner may then define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1; see generally 20 C.F.R. §§ 404.1567, 416.967. "[A] proper RFC analysis" requires "a logical explanation" explaining how the medical evidence translates to the Commissioner's conclusion. Thomas v. Berryhill, No. 17-2215, 2019 WL 193948, at *3 (4th Cir. Jan. 15, 2019), as amended (Feb. 22, 2019).

After determining the RFC, the Commissioner then determines if the claimant is unable to perform past work at step four. Mascio, 780 F.3d at 635; Lewis, 858 F.3d at 862. If the claimant meets her burden as to past work at step four, the Commissioner proceeds to step five.

> At step five, the burden shifts to the [Commissioner] to prove, by a preponderance of the evidence, that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience. [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. The [Commissioner] typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. Id.

Lewis, 858 F.3d at 862 (quotation marks omitted). If the Commissioner meets this burden in step five, the claimant is deemed not disabled, and the benefits application is denied. Id.

## III. ANALYSIS

Plaintiff raises four assertions of error: (1) the Commissioner's determination of jobs Plaintiff can perform conflicts with testimony credited by the Appeals Council, (2) the Commissioner failed to explain a conflict between vocational testimony and the DOT, (3) the Commissioner failed to perform a function-by-function analysis of Plaintiff's abilities, and (4) the hypothetical question presented to the VE omitted some of Plaintiff's limitations. (Doc. No. 7,4).

5

A. <u>Appeals Council Conflict</u>

The Appeals Council found "[c]laimant's symptoms are consistent with and supported by the evidence of the record." (Tr. 482). Because the Appeals Council failed to "limit this finding to any time period or qualify it in any way," Plaintiff asserts the ALJ's determination of step-five jobs is inconsistent with the evidence in the record. (Doc. No. 7, 11). First, while the Appeals Council found evidence supporting Plaintiff's symptoms, that is only the first step of the "two-step process" used by the Commissioner when considering a claimant's symptoms. (Tr. 496); <u>Lewis</u>, 858 F.3d at 862 (holding that after finding claimant's symptoms consistent with the evidence, the ALJ must evaluate the extent to which their "intensity and persistence" would limit claimant's ability to work). The Appeals Council adopted the ALJ's evaluation of this second step when it adopted the ALJ's "findings under steps 1, 2, 3, 4, and 5 of the sequential evaluation and the assessed residual functional capacity." (Tr. 481). Since the Appeals Council adopted the ALJ's assessment of "the intensity, persistence, and limiting effects," (Tr. 496), of Plaintiff's symptoms and how they affect Plaintiff's ability to work, Plaintiff's argument on this point is without merit.

Plaintiff also asserts the "Appeals Council did not adopt, even in part, the ALJ's adverse credibility finding, or his credibility rationale" when it affirmed the ALJ's finding Plaintiff was not disabled from June 24, 2011, through August 28, 2016. (Doc. No. 7, 11). The transcript of the Appeals Council's decision provided to this Court, however, states "[t]he Appeals Council adopts the Administrative Law Judge's findings or conclusions" regarding Plaintiff's limitations during this period, (Tr. 480), and this section of the ALJ's decision "Findings of Fact and Conclusions of Law," nearly eleven pages long, is replete with credibility assessments. (Tr. 493-503). Thus, Plaintiff's contention the ALJ's credibility assessments were somehow not adopted by the Appeals Council is unpersuasive to this Court.

Plaintiff further contends, however, the symptoms Plaintiff alleges "do not permit sustaining any work on a regular and continuing, 8-hour, 5-day basis" because Plaintiff testified her depression causes her to stay in bed two or three days a week. (Doc. No. 7, 11). While Plaintiff cites the VE's testimony that missing two work days per week would rule out gainful employment, (Doc. No. 7, 12), the ALJ assessed Plaintiff's mental limitations and evidence, and determined based on the evidence that absenteeism did not need to be incorporated into Plaintiff's RFC. The Appeals Council adopted the ALJ's findings relating to Plaintiff's depression. (Tr. 482). These findings by the ALJ concluded the evidence showed Plaintiff's "emotional symptoms have improved as long as she has been compliant with therapy and medication." (Tr. 499). The ALJ's review of Plaintiff's depression symptoms within weeks of the alleged onset date of June 2011 found no "unusual anxiety or evidence of depression." (Tr. 499).

The ALJ also reviewed Plaintiff's records from 2012 to 2016, which showed "normal psychiatric exams, including normal memory and orientation." (Tr. 499). The ALJ explained why he gave little weight to the suggested limitations of Dr. Pantea indicating Plaintiff's symptoms would cause her to be absent for work more than four days per month because the ALJ found these limitations conflicted with Dr. Pantea's own treatment notes and the findings of Plaintiff's psychiatrist. (Tr. 501). Considering the lack of credible medical evidence supporting Plaintiff's alleged absenteeism caused by depression and the State medical expert's finding that Plaintiff could work 8 hours per day, the ALJ concluded Plaintiff "has not met her burden of establishing that she has the additional limitations" requiring her to be absent from work because of depression. (Tr. 503). Because of the substantial evidence outlined above, this Court finds no reversible error in the Appeals Council's adoption of the ALJ's determination Plaintiff had the RFC to perform the step-five jobs listed by the VE.

Next, Plaintiff argues the ALJ did not sufficiently consider Plaintiff's need to elevate her feet, alternate between sitting and standing, and limit arm and hand movement when the ALJ asked the VE which step-five jobs Plaintiff could perform. (Doc. No. 7, 13). As stated above, this Court only looks to whether the ALJ's decision not to include these limitations is supported by substantial evidence. Astrue, 667 F.3d at 472. The ALJ evaluated Dr. Pantea's opinion that Plaintiff needed to elevate her legs for half the workday, but the ALJ explained he gave little weight to this opinion because it was inconsistent with the opinion of Plaintiff's treating podiatrist, who only limited Plaintiff to sedentary work with occasional standing and walking. (Tr. 500-501). Furthermore, the ALJ gave substantial weight to the evidence from expert State medical consultants who found Plaintiff could "sit for about six hours in a work day, [and] could stand or walk for about two hours in a work day. . . ." (Tr. 501).

Finally, the ALJ also considered evidence of Plaintiff's ability to perform tasks requiring reaching, handling, and fingering and explained to what extent Plaintiff's limitations affected her RFC. The ALJ noted that on the alleged onset date of June 24, 2011, Plaintiff complained of severe pain but maintained "normal range of motion" in "all 4 extremities," and by September 2011, Plaintiff "had improved about 95 percent" with "a full range of motion of the shoulder and normal sensation and range of motion in the left hand." (Tr. 497). Additionally, the ALJ considered evidence from Plaintiff's September 2013 injury to her left elbow and forearm and Plaintiff's subsequent physical therapy which allowed her to "lift 13.5 pounds with 2 hands without pain" and "vacuum, sweep, carry groceries and open doors" and regain "90 percent of motion of the left hand." (Tr. 498). The ALJ's decision relied on the evidence that Plaintiff's dominant right-hand "showed no abnormalities . . . except for bursitis, which eventually resolved," (Tr. 499), and Plaintiff's daily activities undermined her testimony of limitations and pain. (Tr. 500). The

8

ALJ gave great weight to the State medical expert opinion stating Plaintiff could "lift and carry 20 pounds occasionally and 10 pounds frequently . . . with frequent but not constant reaching overhead," but further limited Plaintiff's lifting ability to "carrying 5 pounds frequently and 10 pounds occasionally" to account for the other evidence in the record. (Tr. 501). This Court's job is not to "reweigh conflicting evidence, [or] make credibility determinations," but only consider whether the Commissioner's decision was supported by substantial evidence. Hancock v. Astrue, 667 F.3d at 472. Therefore, as described above, this Court finds the Commissioner's decisions regarding Plaintiff's alleged need to elevate her feet, have a sit/stand option, and perform only limited reaching, handling, and fingering to be supported by substantial evidence.

B. DOT and Vocational Testimony Conflict

Plaintiff next asserts the VE's identification of jobs requiring a DOT Reasoning level of 2 or 3 in response to the ALJ's hypothetical created a conflict with the ALJ's RFC calculation limiting Plaintiff to "simple repetitive tasks," (Tr. 482), that the ALJ should have identified and resolved. (Doc. No. 7, 15).

When the ALJ relies on the testimony of a VE in step five to determine disability, the ALJ has the responsibility to (1) inquire whether there are any conflicts between the VE's testimony and the DOT and (2) elicit a reasonable explanation for any apparent conflict from the VE. Pearson v. Colvin, 810 F.3d 204, 208-10 (4th Cir. 2005). A conflict is apparent if the "[VE's] testimony seems to, but does not necessarily, conflict with the [DOT]." Pearson, 810 F.3d at 209. "[I]f the ALJ does not elicit [an] explanation [for an apparent conflict], then the [VE's] testimony cannot provide substantial evidence to support the ALJ's decision." Id.; see also Henderson v. Colvin, 643 F. App'x 273, 277 (4th Cir. 2016) ("[W]e held that a VE's testimony that apparently conflicts with the DOT can only provide substantial evidence if the ALJ received an explanation from the

VE explaining the conflict and determined both that the explanation was reasonable and that it provided a basis for relying on the VE's testimony rather than the DOT.").

When asked whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC, the VE identified the jobs of addresser, call-out operator, and final assembler. (Tr. 529). The ALJ determined the VE's testimony to be consistent with the DOT. (Tr. 503). Plaintiff notes that according to the DOT, the jobs addresser and call-out operator have Reasoning Levels of 2 and 3, respectively. (Doc. No. 7,15). A Reasoning Level of 2 requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." 209.587-010 ADDRESSER, DICOT 209.587-010. A Reasoning Level of 3 requires the ability to "[a]pply commonsense understanding to carry out instructions" and "[d]eal with problems involving several concrete variables in or from standardized situations." 237.367-014 CALL-OUT OPERATOR, DICOT 237.367-014. Plaintiff contends these requirements are inconsistent with Plaintiff's RFC limitation to "simple repetitive tasks," and the ALJ's failure to address this inconsistency constitutes reversible error. (Doc. No. 7, 15).

This Court has consistently held there is no apparent conflict between a claimant's RFC limitation to simple, repetitive tasks and Reasoning Level 2 and 3 occupations. See Hammond v. Berryhill, No. 3:17-cv-00096-FDW, 2018 WL 1472488, 7 (W.D.N.C Mar. 26, 2018) (Plaintiff failed to show how a limitation to "simple, routine tasks" in both the RFC and the hypothetical to the VE is a conflict with the Reasoning Level 2); Wilhelm v. Berryhill, No. 5:17-cv-00138, 2018 WL 4705562, at *5 (W.D.N.C. Sept. 29, 2018) (finding "no apparent conflict exists between jobs having a Reasoning Level of 2 or 3 and a limitation to only performing simple, routine, repetitive tasks."); Hicks v. Astrue, No. 5:11-CV-182-RLV-DSC, 2012 U.S. Dist. LEXIS 184231, 2012 WL

6840580, at *3 (W.D.N.C. May 22, 2012) ("This Court has recently held that there is no apparent conflict between an RFC limitation to simple, routine, repetitive work and Reasoning Level two or three jobs."). Plaintiff's assertion is therefore without merit.

C. <u>Failure to Perform Function-by-Function Analysis</u>

Similar to her first assertion of error, Plaintiff next asserts the Appeals Council failed to adopt the ALJ's function-by-function analysis, and even if it did, the ALJ's function-by-function analysis was deficient. (Doc. No. 7, 17). As discussed above, the Appeals Council's adoption of the ALJ's "findings or conclusions that the claimant is not disabled from June 24, 2011 through August 29, 2016," (Tr. 481), adopted the entire section entitled "Findings of Fact and Conclusions of Law" insofar as it does not conflict with the Appeals Council's finding Plaintiff became disabled as of August 29, 2016. (Tr. 493). Therefore, Plaintiff's contention the Appeals Council did not adopt the ALJ's function-by-function analysis is unpersuasive.

The Court now turns to whether the ALJ's function-by-function analysis was sufficient. First, Plaintiff contends the ALJ failed to "consider the extent" to which Plaintiff could stay on task during a given workday because of Plaintiff's moderate limitation in concentrating, persisting, or maintaining pace. (Doc. No. 7, 21). As discussed above, this Court finds substantial evidence supporting the ALJ's determination of Plaintiff's ability to perform work in an 8-hour, 5-day per week work setting. The ALJ specifically evaluated Plaintiff's complaint that "she has two bad days a week when she does not dress and stays in bed all day" but found Plaintiff's testimony inconsistent with "later testimony she no longer sees a psychiatrist because she did not like him and did not feel she needed him." (Tr. 499). Additionally, the ALJ gave "substantial weight to the findings of the State agency medical consultants" who opined "the claimant could sit for about six hours in a work day [and] could stand or walk for about two hours in a work day." (Tr. 501).

11

Finally, the ALJ assessed the evidence showing Plaintiff "did not need to be reminded to do things or to go places and that she did not need someone to accompany her," (Tr. 500), and the concurring opinion of the State agency psychological consultant, who did not find Plaintiff's depression likely to cause absenteeism. This Court concludes substantial evidence supports the ALJ's determination Plaintiff "can perform simple, routine and repetitive tasks." (Tr. 502). Therefore, Plaintiff's argument is without merit.

Plaintiff's final contention regarding the function-by-function analysis is the ALJ failed to include Plaintiff's mild limitations in ability to interact with others and adapt or manage herself. (Doc. No. 7, 22). The ALJ explained Plaintiff had the ability to "perform routine daily and self-care activities without reminders" including daily bathing even on the days Plaintiff alleges she is unable to get out of bed. (Tr. 495). Further, Plaintiff testified she "spends time with her spouse, daughter and grandchild; attended church and went shopping." (Tr. 495). The ALJ finally noted Plaintiff's mental "[e]xaminations showed the claimant was cooperative and did not note any difficulty interacting" with other persons and any "depressive symptoms improved with medication and therapy." (Tr. 495). This Court therefore finds the ALJ's analysis to be supported by substantial evidence as explained by the ALJ in his written decision.

D. Insufficient Hypothetical

Plaintiff's final challenge is to the hypothetical question to the VE, which Plaintiff argues was based on the ALJ's defective RFC calculation. Plaintiff contends the jobs that the VE tendered in response to the hypothetical do not sufficiently incorporate Plaintiff's limitations. (Doc. No. 7, 23-24). Because this Court has already found no error or "defect" in Plaintiff's RFC, this argument is mooted.

IV. CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 6) is DENIED, the Commissioner's Motion for Summary Judgment (Doc. No. 8) is GRANTED, and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: May 7, 2019

Frank D. Whitney
Chief United States District Judge